## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Reginald N. Birts, | Case No. 18-cv-2316 (NEB/HB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| St. Jude's (Medical), | |
| Defendant. | |

Reginald N. Birts, 395 Luella Street North, #B14, St. Paul, MN 55119, *pro se*

Patrick R. Martin, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., 225 South Sixth Street, Suite 1800, Minneapolis, MN 55402, for Defendant St. Jude (Medical)

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Defendant St. Jude Medical's ("St. Jude")[1] Motion for Summary Judgment. (Def.'s Mot. for Summ. J. [Doc. No. 4].) This motion was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B)–(C) and District of Minnesota Local Rule 72.1 for a report and recommendation. *See* (Order of Referral dated Aug. 16, 2018 [Doc. No. 12]; Order of Referral dated Sept. 24, 2018 [Doc. No. 20].) For the reasons set forth below, the Court recommends that St. Jude's Motion for Summary Judgment be granted in its entirety.

---

[1] St. Jude is incorrectly referenced in the caption of the complaint as St. Jude's (Medical). The correct corporate name is St. Jude Medical. (Def.'s Mem. in Supp. of Summ. J. [Doc. No. 6] at 1.)

1

## I.    Background

### A.    The Alleged Discrimination

Plaintiff Reginald N. Birts, who is proceeding *pro se,* filed suit against St. Jude on May 4, 2018. Birts's allegations stem from his experience during an October 13, 2014, hiring process. (Pl.'s Exs. [Doc. No. 15 at 3].)[2] Birts initially sent his resume via email to Nou Vang, an employee of Volt Management Corp. ("Volt"). (*Id.* at 21.) Volt provides Volt employees on a temporary basis to St. Jude. (Decl. of Deb Damhof, "Damhof Decl." [Doc. No. 8 ¶¶ 2–3].) On October 13, 2014, Birts was evaluated by Volt for a temporary Medical Assembler position at St. Jude. (Pl.'s Exs. at 2.) The evaluation was conducted on site at the St. Jude facility in Minnetonka. (*Id.* at 10, 17–20.) Deb Damhof, a Volt manager, described the hiring process as follows:

> First, Volt conducted a pre-screen interview over the phone. Here, Volt's Nou Vang conducted the initial pre-screen interview of Mr. Birts. Second, the applicant submitted an online application for employment at Volt. Third, the applicant performed onsite testing in Minnetonka. Fourth, Volt conducted an in-person interview of the applicant to determine both schedule availability and skill match to the current opening. If and only if Volt decided that the applicant was a good match for St. Jude, then the applicant moved beyond the fourth step to the fifth and final step – an in-person final interview with a St. Jude supervisor.

(Damhof Decl. ¶ 3.) Wendy Velarde, a senior St. Jude Human Resources manager, confirmed that "Volt candidates are not passed on by Volt to St. Jude Medical for consideration unless they first pass the step of being approved by a Volt recruiter."

---

[2] This citation refers to the exhibits Birts filed with his response to St. Jude's motion. (Resp. to Mot. for Summ. J. [Doc. No. 14].) They largely consist of a copy of Birts's Complaint and the exhibits thereto. Although the exhibits are not in the form of a typical sworn declaration, the Court notes that Birts personally verified the Complaint. (Pl.'s Exs. at 3.) When referencing documents submitted by Birts, CM/ECF pagination is used.

(Decl. of Wendy Velarde, "Velarde Decl." [Doc. No. 10 ¶ 2].)

Birts completed steps one through three of this process. In the onsite testing he scored one hundred percent on the reading portion, ninety-two percent on the mathematics portion, and eighty percent on the microscope tasks. (Pl.'s Exs. at 22.) Birts then waited and watched as other applicants were taken back for interviews. (*Id.* at 2.) After he complained to a receptionist employed by St. Jude about the delay, a recruiter employed by Volt, Paveena Kalra, took Birts to a different room and asked him several questions. Specifically, she inquired about (1) why he wanted the job and (2) if he was aware of the distance and traffic from his residence to the job site. (*Id.* at 2–3.) Kalra stated in her sworn declaration submitted in support of St. Jude's motion that Birts's application

> showed a lot of disqualifiers, including that he wanted more money than the position offered, the drive exceeded his expressed desire, St. Jude wanted people to work overtime on Friday and Saturday (but his email said Monday - Thursday), and his application showed experience in call centers, sales, and banking, but not in manufacturing and medical assembly.

(Decl. of Paveena Kalra, "Kalra Decl." [Doc. No. 10 ¶ 4].) As a result, she decided not to advance him to the final step of the hiring process for an interview with a St. Jude supervisor. (Kalra Decl. [Doc. No. 10 ¶¶ 3–4].) Thus, Birts was never passed on by Volt to St. Jude for an interview by a St. Jude supervisor. (Damhof Decl. ¶¶ 3–4; Velarde Decl. ¶ 3.)

After he was not offered a position, Birts followed up with Vang, who gave him his test results and advised him to contact Kalra if he had further questions. (Pl.'s Exs. at 22.) Birts states that he was the only black American and the only person over the age of

3

50 among the candidates who were considered for the open Medical Assembler positions that day, and indicates that he was the only candidate that day who was not hired, although his basis for the latter assertion is not clear. (Pl.'s Exs. at 2–3; Pl.'s Surreply Exs. at 5.)

### B.    Initial Agency Filings and Subsequent Lawsuit

On August 17, 2015, Birts filed age and race discrimination claims against St. Jude with the Minnesota Department of Human Rights ("MDHR") under the Minnesota Human Rights Act. (Decl. of Patrick R. Martin, "Martin Decl." Ex. 4 [Doc. No. 7 at 33].)[3] That same day, Birts also filed claims against St. Jude with the Equal Employment Opportunity Commission ("EEOC") under § 1981 of the Civil Rights Act of 1866, the Age Discrimination in Employment Act, and Title VII of the Civil Rights Act of 1964. (*Id.* at 35.) On May 23, 2016, the MDHR informed Birts that it would not be taking further action on his state-law claims. (Martin Decl. Ex. 5 at 37.) The MDHR letter informed Birts that he had forty-five days to commence a civil action against St. Jude. (*Id.*) On November 9, 2016, the EEOC notified Birts of its decision to dismiss his federal-law claims because they were untimely. (Martin Decl. Ex. 6 at 39.) The EEOC letter informed Birts that he had ninety days to file a lawsuit against St. Jude. (*Id.*)

On September 27, 2017, Birts brought suit against Volt for discriminatory hiring. *Birts v. Volt Workforce Solutions*, No. 17-cv-04705 (MJD/HB). Volt and Birts reached a settlement in that case. *See* Minute Entry Dated March 26, 2018, *Birts v. Volt Workforce*

---

[3] The Martin Declaration and the exhibits thereto were filed as a single document. [Doc. No. 7.]. Citations to page number refer to CM/ECF pagination.

*Solutions*, No. 17-cv-04705 (MJD/HB) [Doc. No. 27] (noting that the parties reached a settlement and recited the material terms on the record). As the final settlement papers were being prepared, however, a dispute arose about whether the settlement negotiated with Volt included a release of St. Jude. The dispute was submitted to the Court for resolution, and the Court determined that the material terms of the settlement with Volt did not include a release of St. Jude. *See* June 19, 2018, Report and Recommendation, *Birts v. Volt Workforce Solutions*, No. 17-cv-04705 (MJD/HB) [Doc. No. 36] (concluding that proposed language in the draft settlement agreement purporting to release St. Jude from liability was not consistent with the terms previously reached between the parties). The lawsuit against Volt was dismissed pursuant to the settlement on July 2, 2018. *See* July 2, 2018 Order, *Birts v. Volt Workforce Solutions*, No. 17-cv-04705 (MJD/HB) [Doc. No. 40].

On May 4, 2018, Birts filed a complaint against St. Jude in Hennepin County District Court, alleging violation of (1) the Minnesota Human Rights Act ("MHRA"); (2) Section 1981 of the Civil Rights Act of 1866 ("§ 1981"); (3) the Age Discrimination in Employment Act ("ADEA"); and (4) Title VII of the Civil Rights Act of 1964 ("Title VII"). (Pl.'s Exs. at 2.) St. Jude was served with the complaint on July 19, 2018. (Martin Decl. Ex. 1 at 4.) On August 8, 2018, St. Jude removed the case to federal court. (Not. of Removal [Doc. No. 1].) This motion for summary judgment followed approximately a week later. It does not appear that the parties have conducted any discovery.

In opposition to St. Jude's motion, Birts filed a number of submissions, including his exhibits and a notice of witnesses, "Plaintiff's Notice of Witnesses" [Doc. No. 16]. The latter document, which is not sworn, identifies the following individuals and non-parties that Birts asserts would verify his statements: (1) Carmen Mask, an employee with Goodwill-Easter Seals regarding "[V]olt['s] temp to HIRE position for medical assembly with clear hours and starting pay of $11.00 to $11.50 per hour"; (2) Nou Vang, an employee of Volt, who "facilitate[ed] and ensur[ed] [his] resume and application was adequate and correct" and who "screened [him] for [his] qualification[s]"; (3) Amal Jeyiana, along with "Cleo," "Janie," "Muhammed," and "Lee," regarding their respective testing and hiring by Volt; (4) "Ms. Ginny," an employee with St. Jude[4] who was to interview Birts should he pass Volt's screening and who purportedly did interview the others who were hired; (5) "Ashley," an employee with St. Jude[5] who was a receptionist in the lobby in which Birts waited; and (6) the EEOC, who "got involved to oversee the Minnesota Department of Human [R]ights" complaint. (*Id.* at 1–2).

In addition, on October 1, 2018, Birts submitted an additional unsworn response and "exhibits" to St. Jude's reply, which the Court will refer to as "Pl.'s Surreply" [Doc. No. 21] and "Pl.'s Surreply Exs." [Doc. No. 22]. In those documents Birts reiterates several arguments made in his initial response, and refers again to Mask, Vang, Jeyiana,

---

[4] For the purposes of this Report and Recommendation, the Court will assume Ms. Ginny is an employee of St. Jude, notwithstanding a lack of a sworn statement or other evidentiary showing to corroborate Birts's claim.

[5] For the purposes of this Report and Recommendation, the Court will assume Ashley is an employee of St. Jude, notwithstanding a lack of a sworn statement or other evidentiary showing to corroborate Birts's claim.

Cleo, Janie, Muhammed, Lee, Ashley, and the EEOC asserting they would corroborate

his claims. *See* (Pl.'s Surreply at 1.)  None of Birts's submissions regarding these

witnesses, however, include sworn declarations either from him or from those identified

in his witness list. *See generally* (Pl.'s Exs.; Pl.'s Not. of Witnesses; Pl.'s Surreply; Pl.'s

Surreply Exs.)  Instead, Birts asserts that "[a]ll witnesses will submit a notarized

statement about their testing and hiring procedures, some by the way, scoring lower on

exams than I, and with less relevant experience."  (Pl.'s Surreply at 1.)

## II.    Discussion

### A.    Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under

the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A

dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Id.*  In considering a motion for summary judgment,

the Court views the evidence and the reasonable inferences that may be drawn from the

evidence in the light most favorable to the nonmoving party—in this case, Birts.

*McPherson v. O'Reilly Auto., Inc.*, 491 F.3d 726, 730 (8th Cir. 2007).  The Court must

also liberally construe Birts's *pro se* claims. *See Stone v. Harry*, 364 F.3d 912, 914–15

(8th Cir. 2004) ("When we say that a pro se complaint should be given liberal

construction, we mean that if the essence of an allegation is discernible, even though it is

not pleaded with legal nicety, then the district court should construe the complaint in a

7

way that permits the layperson's claim to be considered within the proper legal framework.").

That being said, the party opposing summary judgment may not rest on his allegations, "but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. And, "[l]ike any other civil litigant," a *pro se* plaintiff must respond to a defendant's motion for summary judgment "with specific factual support for his claims to avoid summary judgment." *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001). Moreover, the factual support must be in a form that would be admissible in evidence, typically in the form of testimony or sworn declarations or affidavits by someone with personal knowledge who is competent to testify to the facts stated. *See* Fed. R. Civ. P. 56(c)(1). This is a requirement that must be met even by a pro se litigant. Pro se parties "cannot withstand summary judgment by relying on unsworn allegations, but must set forth by affidavit or other evidence specific facts showing a genuine issue for trial." *Grant v. Quiram*, No. 14-cv-4589 (WMW/BRT), 2016 WL 4196823, at *5 (D. Minn. June 23, 2016), *R & R adopted sub nom. Grant v. Quirram*, 2016 WL 4186937 (D. Minn. Aug. 8, 2016 (citations omitted).

However, Rule 56(d) provides that if the party opposing summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may defer considering the motion or may deny it, or may allow time to obtain such declarations or to take discovery. Fed. R. Civ. P. 56(d). In addition, if a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the court may provide an opportunity

to do so.  Fed. R. Civ. P. 56(e).  On the other hand, it may under those circumstances consider the facts that were not properly addressed to be undisputed, or it may grant summary judgment "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  *Id.*

    **B.**    **Analysis**

    St. Jude argues that Birts's MHRA, Title VII, and ADEA claims are untimely. (Def.'s Mem. in Supp. of Summ. J. [Doc. No. 6 at 5, 7–9].)  Birts does not address this argument in any of his responsive filings.  *See generally* (Pl.'s Resp. to Mot. for Summ. J.; Pl.'s Resp. to Reply.)  St. Jude also argues that summary judgment is appropriate because it had no role in the decision not to hire Birts.  (Def.'s Mem. in Supp. of Summ. J. at 9–12.)

    After careful review of the record before the Court, the Court concludes that St. Jude's motion should be granted.  There is no genuine dispute that Birts's claims against St. Jude brought under the MHRA, the ADEA, and Title VII fail as a matter of law because they were filed outside the statute of limitations.  As for Birts's § 1981 claim, the evidence before the Court establishes that the decision not to advance Birts through the hiring process was Volt's decision, not St. Jude's, and Birts has not shown that additional discovery or an opportunity to provide additional declarations would yield evidence sufficient to create a genuine issue of material fact on that point.

### 1.    Birts's MHRA, ADEA, and Title VII Claims are Untimely

### a.    Age Discrimination Claims Under MHRA and ADEA

Birts asserts that St. Jude discriminated against him on the basis of age in violation of the MHRA and the ADEA when it failed to offer him a position as a Medical Assembler.[6]  The MHRA is codified in Minnesota Statutes §§ 363A.01–.44.  It prohibits an employer from "discriminat[ing] against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment" based on age.  Minn. Stat. § 363A.08, subdiv. 2, 3.  The ADEA prohibits discrimination based on age against employees (or applicants) 40 and over.[7]  *See* 29 U.S.C. §§ 626–634.

The Court first considers whether Birts timely filed his age discrimination claims under the MHRA and ADEA.  The MHRA requires the filing of a claim of unfair discriminatory practice within one year of the alleged occurrence of that practice.  Minn. Stat. § 363A.28, subdiv. 3.  Following an adverse decision from the MDHR, a party has forty-five days from receipt of that decision to file a civil action against the respondent.  Minn. Stat. § 363A.33, subdiv. 1(1).  Receipt is presumed to have occurred "five days from the date of service" of the letter.  *Id.*, subdiv. 1.

---

[6]  In his complaint, Birts alleges violation of the MHRA under Minnesota Statutes § 363A.13.  (Pl.'s Exs. at 2).  However, that particular section of the MHRA applies to educational institutions, not employers.  St. Jude does not address this discrepancy, and it is clear from the context that Birts is alleging employment discrimination based on his age and race.  *See* Minn. Stat. § 363A.08; *see also Stone*, 364 F.3d at 914–15.

[7]  Age discrimination claims brought under either statute are analyzed under the same evidentiary framework, so the Court considers these claims together.  *See Aulick v. Skybridge Americas, Inc.*, 860 F.3d 613, 620 (8th Cir. 2017).

It is undisputed that Birts's MHRA age discrimination claim was timely filed with the MDHR. However, after receiving notice of the Commissioner's decision to dismiss the state-law claims on May 23, 2016, Birts did not commence a civil action against St. Jude until May 4, 2018, nearly two years later. Moreover, St. Jude was not served until July 19, 2018. These dates fall well outside the forty-five day period, which expired in July of 2016. Thus, Birts's MHRA age discrimination claim is untimely, and St. Jude is entitled to summary judgment. *See Cardoso v. Bd. of Regents of Univ. of Minn.*, 205 F. Supp. 3d 1046, 1050 (D. Minn. 2016) (dismissing MHRA claim that was timely filed within forty-five day period, but was not served on the defendants until almost two months later) (citing *Anderson v. Unisys Corp.*, 47 F.3d 302, 309 (8th Cir. 1995)).

Before bringing suit under the ADEA in federal district court, the aggrieved party must first file a claim with the EEOC. 29 U.S.C. § 626(d); 42 U.S.C. § 12117(a). A plaintiff alleging violations in a state like Minnesota that has a state law prohibiting age discrimination in employment must file a claim with the EEOC within 300 days of the event giving rise to the claim. 29 U.S.C. § 626(d)(2); *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 834–35 (8th Cir. 2002).

The alleged discrimination occurred on October 13, 2014. By the Court's calculation, that would have required Birts to file his ADEA claim by August 9, 2015. St. Jude asserts, and the Court agrees, that Birts's August 17, 2015 filing was eight days too late. Birts has not argued, let alone submitted evidence, to the contrary. *See Hudson v. Wells Dairy, Inc.*, 578 F.3d 823, 826 (8th Cir. 2009) (affirming district courts grant of

summary judgment based on plaintiff's filing of ADEA claim three days outside of the 300-day period).

That being said, "[t]he filing of a timely charge with the EEOC is not a jurisdictional prerequisite to a suit in federal court." Rather, it is a condition precedent and, "like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982). However, while courts may consider these doctrines, they are to be utilized sparingly. *See Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (per curiam) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants"). Though Birts does not address the application of any of these principles, the Court does so here, and concludes that the facts of this case do not invite application of waiver, estoppel, or equitable tolling.

"Equitable tolling is appropriate only when the circumstances that cause a plaintiff to miss a filing deadline are out of his hands." *Heideman v. PFL, Inc.*, 904 F.2d 1262, 1266 (8th Cir. 1990), *cert. denied*, 498 U.S. 1026 (1991). The Supreme Court has noted that equitable tolling may be appropriate when a party has received inadequate notice, when a motion for appointment of counsel was pending, when the court has led the party to believe that he had done everything required of him, or when affirmative misconduct on the defendant's part has lulled the plaintiff into inaction. *See Brown*, 466 U.S. at 151. None of these situations applies here. Birts has not offered any evidence explaining why he did not promptly file a lawsuit asserting his ADEA claim against St. Jude but instead

12

waited approximately eighteen months before doing so. Similarly, Birts has presented no facts suggesting that St. Jude by word or deed waived the statute of limitations or should be estopped from asserting it. Thus, summary judgment should be granted for St. Jude on Birts's ADEA claim. *See Hallgren v. U.S. Dep't of Energy*, 331 F.3d 588, 590–91 (8th Cir. 2003) (affirming district court's decision to decline application of equitable tolling principles when complaint alleging ADEA claim was filed five days outside the requisite period).

### b. Race Discrimination Claims Under MHRA and Title VIII

Birts also alleges that St. Jude committed unlawful racial discrimination in the employment context in violation of the MHRA and Title VII. The MHRA prohibits "discriminat[ion] against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment." Minn. Stat. § 363A.08, subdiv. 2. Title VII provides that it is an unlawful employment practice for an employer to fail or refuse to hire any individual "because of such individual's race, color, religion, sex, or national origin." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (quoting 42 U.S.C. § 2000e–2(a)).

Birts's MHRA and Title VII race discrimination claims are also time-barred. The same analysis applied above to Birts's age discrimination claim under the MHRA also applies to his MHRA race discrimination claim. Birts failed to file suit or serve St. Jude within forty-five days of May 23, 2016. Thus, his race-based discrimination claim is untimely under the MHRA. *See Cardoso*, 205 F. Supp. 3d at 1050.

13

Similarly, Birts's Title VII claim fails for the same reason as his ADEA claim. Like the ADEA, Title VII has a 300-day statute of limitations, which begins to run from the date of the last alleged discriminatory act. *Tademe v. St. Cloud State Univ.*, 328 F.3d 982, 987 (8th Cir. 2003). Again, the previous analysis on Birts's ADEA claim is readily applicable to his Title VII claim. Further, the EEOC informed Birts that his claim was untimely in its decision letter sent on November 9, 2016. This letter also conveyed that Birts had ninety days to commence suit against St. Jude. Yet, he waited approximately eighteen months before he brought this lawsuit against St. Jude and has offered no evidence to support the application of equitable doctrines to excuse his delay. St. Jude is therefore entitled to summary judgment on Birts's MHRA and Title VII race discrimination claims.

> **2.    St. Jude is Entitled to Summary Judgment on Birts's Section 1981 Claims Because the Evidence Shows St. Jude Did Not Make the Decision Not to Hire Him.**

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981; *see also St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (stating that § 1981 protects "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics."). Section 1981 claims are subject to a "catch-all" four-year statute of limitations period. *Jackson v. Homechoice, Inc.*, 368 F.3d 997, 999 (8th Cir. 2004) (citing *Jones v. RR Donnelley & Sons Co.*, 541 U.S. 369, 380–81 (2004)). Birts's § 1981

14

claim clearly falls within the four-year statute of limitations, and thus the Court addresses the merits of his claim.

Because Birts has not presented direct evidence of discrimination, the *McDonnell Douglas* burden-shifting framework applies to his claim of race discrimination under § 1981. *Gordon v. Shafer Contracting Co., Inc.*, 469 F.3d 1191, 1195 (8th Cir. 2006). As a threshold matter, Birts must demonstrate a prima facie case of discrimination, which would require a showing that: (1) he was a member of a protected class; (2) he was qualified for an open position; (3) he was denied that position; and (4) the position was filled with a person not in the same protected class. *See Amini*, 643 F.3d at 1074. Birts, a self-described black American male, is a member of a protected class. He was also denied the opportunity to be a Medical Assembler. The Court will also assume for the sake of this discussion that he was qualified for the position, although it notes that Kalra stated in her declaration that he did not have relevant past work history. (Kalra Decl. ¶ 3.) But while Birts clearly believes he was treated disparately because of his race, he has introduced no evidence of the race or ethnicity of the candidates who were actually hired for the available Medical Assembler positions. He states that he did not see other black American candidates on the day he was there (Pl.'s Surreply at 1; Pl.'s Surreply Exs. at 5), but there is no reason to assume that he saw all of the candidates who were considered, let alone all of the candidates who were hired. There is also no evidence of how the experience and skills of those who were hired compared with Birts's own experience and skills. Thus, Birts fails to present a prima facie case of discrimination under § 1981.

But the deficiency in Birts's § 1981 claim is more fundamental—Birts has failed to provide evidence showing that *St. Jude* discriminated against him in the hiring process for the Medical Assembler position. Instead, the only competent evidence in the record before the Court demonstrates that Volt had sole decision-making authority and control over the hiring process through the point at which Birts was rejected. (Damhof Decl. ¶¶ 3–5.) It was not until the fifth application step that St. Jude would have become involved in the hiring process, and Birts did not reach that step. (*Id.*; Kalra Decl. ¶¶ 2–3.)

Birts offers no admissible evidence to the contrary. First, his sworn Complaint refers by name only to two employees of Volt—Vang and Kalra—but does not mention by name any individual employed by St. Jude. (Compl. [Doc. No. 1-1]; Pl.'s Exs. at 2–3.) The original job posting was made through Volt, whose employees alone assessed the qualifications of the applicants and determined which of the applicants would advance through the process. *See, e.g.*, (Damhoff Decl. ¶¶ 3-4; Kalra Decl. ¶¶ 2–3.) Kalra, who interviewed Birts and decided not to forward him for consideration by St. Jude, and whose questions Birts believes revealed discriminatory intent, was a Volt employee, not a St. Jude employee. In his surreply, Birts contends that two individuals, "Ashley and Ms. Ginny" were St. Jude employees who "facilitated the hiring process." (Pl.'s Surreply at 1.) But even if one assumes that both of these individuals were indeed St. Jude employees, Birts's own submissions indicate at most that Ashley was the secretary or receptionist to whom Birts complained about being left in the waiting room (Pl.'s Exs. at 2; Pl.'s Not. of Witnesses at 2), and that "Ms. Ginny" was the St. Jude supervisor who might have interviewed him *if Volt had made the decision to advance him to that step in*

16

*the process.* *See* (Pl.'s Not. of Witnesses at 2 ("A Ms. Ginny (Gcairl@sjm.com) was to interview and did the people mentioned here."))  Nothing in the material submitted by Birts suggests that Ashley or Ms. Ginny participated in the decision not to interview or hire him.  Nothing rebuts the sworn declarations of Kalra, Valverde, and Damhof that it was Volt's decision not to pass Birts along for an interview by St. Jude.  Absent such evidence, Birts's claim fails as a matter of law because he has not connected St. Jude, or any of its employees, to the alleged discriminatory conduct.  *See Taylor v. Ahold*, No. 3:16cv241, 2017 WL 377935, at *2 (E.D. Va. Jan. 23, 2017) (finding that plaintiff's discrimination claims failed as a matter of law because the plaintiff "has not connected the allegedly discriminatory conduct to the Defendant or his employees").

### 3.    Whether the Court Should Defer Decision on the Motion Under Rule 56(d) or (e).

Having concluded that on the present record, St. Jude would be entitled to summary judgment on all of Birts's claims, the Court next considers whether there is reason to believe that discovery would reveal additional evidence that could create a genuine issue of material fact sufficient to defeat summary judgment.   "Although discovery need not be complete before a case is dismissed . . . .  Rule 56[d] allows a party to request a delay in granting summary judgment if the party can make a good faith showing that postponement of the ruling would enable it to discover additional evidence which might rebut the movant's showing of the absence of a genuine issue of material fact." *Robinson v. Terex Corp.*, 439 F.3d 465, 467 (8th Cir. 2006).  While it is unusual for summary judgment to be granted absent some amount of discovery, it is not *per se* an

abuse of discretion to grant summary judgment at this stage of this litigation. *See Engine P'ship v. Self-Cleaning Env'ts USA, Inc.*, 74 F.3d 1243 (8th Cir. 1996) (per curiam). Birts must make a showing that identifies the particular facts he believes discovery will reveal. *Dulany v. Carnahan*, 132 F.3d 1234, 1238 (8th Cir.1997). Specifically, he must describe: "(1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." *Johnson v. United States*, 534 F.3d 958, 965 (8th Cir. 2008) (addressing the question in the context of Rule 56(f), which was amended in 2010 into what is now Rule 56(d)).

Birts does not argue or even suggest that discovery would elicit evidence that could overcome St. Jude's arguments for summary judgment on statute of limitations grounds on his MHRA, ADEA, and Title VII claims. Accordingly, there is no basis to consider deferring summary judgment as to those claims.

As to Birts's § 1981 claim, however, Birts states in his surreply that he believes interrogatories would help to clarify the relationship between Volt and St. Jude with respect to hiring (Pl.'s Surreply at 1), and that discovery would allow him "to show issues of facts." (Pl.'s Surreply Exs. at 1.) In addition, he asserts in both his Notice of Witnesses and his surreply that he could, if given the opportunity, provide affidavits in support of his claims. *See generally* (Pl.'s Not. of Witnesses; Pl.'s Surreply.) Therefore, although Birts did not make a Rule 56(d) request in the form of an affidavit, in the interest of justice, the Court considers whether allowing time for discovery before ruling on St. Jude's motion for summary judgment on his § 1981 claim would allow Birts to

18

develop competent evidence that might raise a genuine issue of material fact that could defeat the motion.

If the only basis for St. Jude's motion on this claim was the absence of evidence to support a prima facie case that he was qualified for the position and was denied it because of his race, the Court might well recommend deferring decision on that claim to give Birts the opportunity to take some limited discovery about the qualifications and racial make-up of the candidates who were considered and ultimately hired. But as the Court has noted, the more fundamental deficiency in Birts's submissions is that he has not identified any specific discriminatory conduct by St. Jude or its employees. To warrant additional time for discovery under Rule 56(d), plaintiffs must show: "(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 895 (8th Cir. 2014) (quotation omitted). But Birts's response, even if it were in affidavit form, falls far short of the required specific factual showing. All of the evidence before the Court demonstrates that Volt was the party responsible for the hiring decision Birts now challenges. The Volt manager with knowledge of the relationship between Volt and St. Jude submitted a sworn affidavit describing the process and stating unequivocally that it was up to Volt to decide whether to refer a candidate for an interview with a St. Jude supervisor. The Volt recruiter who was on-site at St. Jude and was responsible for making the decision in Birts's case submitted a sworn affidavit stating that she was the one who decided not to refer him for

19

an interview with St. Jude and explaining why she made that decision.  And a senior St.

Jude Human Resources manager corroborated Volt's description of the process and stated

that a review of their documents maintained in the ordinary course of business confirmed

that Volt did not refer Birts to St. Jude for an interview.

Against this record, nothing in Birts's unsworn submissions identifies someone

who, given the opportunity, appears to have foundation to testify that it was St. Jude, not

Volt, who decided not to progress him through the hiring process, or that St. Jude

somehow directed or influenced Volt to discriminate against him on the basis of his race.

For example, Birts's witness list includes: an employee of Goodwill-Easter Seals; the

EEOC; and a number of individuals that he asserts went through the same testing and

hiring process that he did but, unlike him, apparently made it through to the interview

with someone from St. Jude and were ultimately hired into the position. *See generally*

(Pl.'s Not. of Witnesses.)  None of these potential witnesses have firsthand knowledge of

the relationship between Volt and St. Jude or could address the question of whether Volt

or St. Jude was responsible for the outcome of the process when it came to Birts.  With

respect to Vang, Birts's submissions confirm that she was not at the interview and has no

personal knowledge of what transpired there.  *See* (Pl.'s Exs. at 22) (a follow-up e-mail

between Birts and Vang, who instructed Birts to contact Kalra regarding questions Birts

had regarding the interview).  Indeed, the only Volt employee whom Birts specifically

names and who was there that day was Kalra, who submitted a sworn statement in

support of St. Jude's motion.  *See generally* (Kalra Decl.)  Finally, as it relates to St. Jude

employees Ashley and Ms. Ginny, Birts has not demonstrated that they had firsthand

knowledge of his allegations because nothing in the material submitted by him suggests that either one participated in the decision not to interview or hire him.

That Birts may not have understood the process, or that he initially mistakenly believed the people he interacted with were St. Jude employees (*see* Pl.'s Surreply at 1), or that Volt or even St. Jude could have done a better job of making the process clear to him does not create a genuine issue of material fact as to whether *St. Jude* acted with discriminatory intent, which is the fundamental problem with Birts's lawsuit. And Birts has advanced no specific reason to believe that discovery would refute the sworn evidence from those who were involved and in a position to know. Moreover, any claim Birts may have had that Kalra discriminated against him in her decision not to advance him through the process was released when he entered into a settlement with Volt.

In short, Birts has not set forth "specific facts that [he] hope[s] to elicit from further discovery," or provided a specific reason to believe those facts exist, or shown that "these sought-after facts are 'essential' to resist the summary judgment motion." *Toben*, 751 F.3d at 895. *See also*, *Johnson*, 534 F.3d at 965; *Simmons Oil Corp. v. Tesoro Petroleum Corp*, 86 F.3d 1138, 1144 (Fed. Cir. 1996); *Willmar Poultry Co. v. Morton-Norwich Products, Inc.*, 540 F.2d 289, 297 (8th Cir. 1975). Thus, the Court finds no basis to conclude that discovery would enable Birts to unearth information demonstrating that St. Jude discriminated against him on October 13, 2014, when he was passed over for a Medical Assembler position. Accordingly, the Court recommends that summary judgment be granted as to all of Birts's claims.

III.    **Recommendation**

Accordingly, based on all the files, records, and proceedings herein **IT IS**

**HEREBY RECOMMENDED** that Defendant St. Jude's motion for Summary Judgment

[Doc. No. 5] be **GRANTED**.


Dated: December 4, 2018                 s/ *Hildy Bowbeer*
                                        HILDY BOWBEER
                                        United States Magistrate Judge


**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to a magistrate judge's findings and recommendations within fourteen days after being served with a copy of the Report and Recommendation.  A party may respond to the objections within fourteen days after being served with a copy of the objections. D. Minn. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c)(1).