UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

REGINALD N. BIRTS,　　　　　　　　　　　　Case No. 18-CV-2316 (NEB/HB)

　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　ORDER ON REPORT AND
　　　　　　　　　　　　　　　　　　　　　　RECOMMENDATION
ST. JUDE'S (MEDICAL),

　　　　Defendant.

---

This matter comes before the Court on a Motion for Summary Judgment [ECF No. 4] filed by Defendant St. Jude Medical, LLC[1] ("St. Jude") on August 15, 2018. In a Report and Recommendation dated December 4, 2018 [ECF No. 23 ("R&R")], United States Magistrate Judge Hildy Bowbeer[2] recommended that St. Jude's motion be granted in its entirety. Plaintiff Reginald N. Birts ("Birts") filed an objection to the R&R. [ECF No. 24 ("Pl.'s Obj.").] St. Jude filed a response to Birts' objection, and Birts filed a second

---

[1] The Complaint caption incorrectly identifies St. Jude as "St. Jude's (Medical)." [ECF No. 1-1 at 3.] The correct corporate name is "St. Jude Medical, LLC." [ECF No. 6 at 1.]

[2] In their documents submitted to this Court, both parties and counsel inaccurately refer to Magistrate Judge Bowbeer as "Magistrate Bowbeer." (*See*, *e.g.*, ECF No. 26 at 2.) The Court takes this opportunity to remind parties and counsel that under the Judicial Improvements Act of 1990, Pub. L. No. 101-650, 104 Stat. 5089 (1990), a magistrate judge's proper title is that of United States Magistrate Judge, rather than simply "magistrate." *See* Ruth Dapper, *A Judge by Any Other Name? Mistitling of the United States Magistrate Judge*, 9 FED. CTS. L. REV. (Fall 2015).

objection in reply to St. Jude's response. [ECF No. 26; ECF No. 28 ("Pl.'s 2d Obj.").] This Court now reviews the R&R.

## BACKGROUND

Birts, a *pro se* plaintiff, filed this action against St. Jude alleging discrimination claims based on the failure to hire him for a temporary medical assembler position in October 2014. [ECF No. 15[3] ("Pl.'s Exs.") at 2–3.]

### I.    Alleged Discrimination

According to the Declaration of Deb Damhof, the Area Program Director and former Area Manager for Volt Management Corp. ("Volt"), Volt provided employees to work as assemblers at St. Jude on a temporary basis. [ECF No. 8 ("Damhof Decl."), ¶¶2–3.] In October 2014, the application/interview process for assembler positions through Volt at St. Jude consisted of several steps:

> *First*, Volt conducted a pre-screen interview over the phone.… *Second*, the applicant submitted an online application for employment at Volt. *Third*, the applicant performed onsite testing in Minnetonka. *Fourth*, Volt conducted an in-person interview of the applicant to determine both schedule availability and skill match to the current opening. If and only if Volt decided that the applicant was a good match for St. Jude, then the applicant moved beyond the fourth step to the *fifth* and final step – an in-person final interview with a St. Jude supervisor.

(Damhof Decl., ¶3 (emphasis added).) Volt did not pass candidates on to St. Jude for consideration unless they first passed the step of being approved by a Volt recruiter. [ECF

---

[3] Birts' summary judgment exhibits do not include a sworn declaration. (Pl.'s Exs. at 2–4.)

2

No. 9 ("Velarde Decl."), ¶2; *see* ECF No. 10 ("Kalra Decl."), ¶2 ("The final step at Volt required that a candidate interview with a [Volt] recruiter like me. If the candidate did well in this interview and seemed like a good fit for working at St. Jude, I would pass the candidate on to a St. Jude supervisor for a final review.").]

Birts initially sent his resume via email to Nou Vang ("Vang"), an employee of Volt. (Pl.'s Exs. at 21.) He then completed steps one through three of Volt's process, including an initial pre-screen interview with Vang, and testing for a temporary medical assembler position. (Damhof Decl., ¶3; Pl.'s Exs. at 2–3.) Birts' testing took place at the St. Jude facility in Minnetonka, Minnesota, on October 13, 2014. (Pl.'s Exs. at 3, 10, 17–20.) Birts scored 100 percent on the reading portion, 92 percent on the mathematics portion, and 80 percent on the microscope tasks. (*Id*. at 2, 22.) Birts then waited as other applicants were taken to their interviews. (*Id*. at 2.) After Birts complained about the delay to a receptionist employed by St. Jude, a recruiter employed by Volt, Paveena Kalra ("Kalra"), took Birts to a room. (*Id*.; Karla Decl., ¶3.) Kalra asked him only two questions: (1) why he wanted the job, and (2) if he was aware of the distance and traffic from his residence to the job site.[4] (Pl.'s Exs. at 2–3.) Birts responded that he was continuing in the general medical field line of work, after having been a general combat medic in the United States Army Reserve, completed a pharmacy technical course, and worked at Boston Scientific.

---

[4] Birts maintains that Kalra did not tell him at the interview that she was employed by Volt, and that he only learned this later. He does not dispute that Volt was her employer.

3

(*Id*. at 3.) He also noted that the commute should not be a concern as his drive was only 20 minutes. (*Id*.)

Kalra attests that Birts' application and email to Volt showed "a lot of disqualifiers," including that Birts "wanted more money than the position offered, the drive exceeded his expressed desire, St. Jude wanted people to work overtime on Friday and Saturday (but his email said Monday–Thursday), and his application showed experience in call centers, sales, and banking, but not in manufacturing and medical assembly."[5] (Kalra Decl., ¶4.) Kalra decided not to advance Birts to the final step of the hiring process for an interview with a St. Jude supervisor, and did not pass Birts on to St. Jude's supervisor for consideration. (*Id*., ¶¶3–4.) Damhof similarly attests that Birts did not proceed to the fifth step of the hiring process because Kalra "conducted an in-person interview (step four) and decided not to move Mr. Birts forward in the process to a final interview with a St. Jude supervisor (step five)." (Damhof Decl., ¶4.) St. Jude's records also show that "Birts was not passed on by Volt to St. Jude Medical for consideration in or around October 13, 2014." (Velarde Decl., ¶3.)

After his interview with Kalra, Birts followed up with Vang, who gave him his test results and advised him to contact Kalra if he had further questions. (Pl.'s Exs. at 22.) Birts maintains that he was the only black American and the only person over the age of 50

---

[5] Birts disputes the validity of the "disqualifiers" stated in Kalra's declaration. (*See, e.g.*, Pl.'s Obj. at 1–2.)

4

among the candidates considered for the open medical assembler positions that day. (*Id.* at 2–3; ECF No. 22 ("Pl.'s Surreply Exs.") at 5.)

## II. Agency Filings and Lawsuits

On August 17, 2015, Birts filed age and race discrimination claims against St. Jude with the Minnesota Department of Human Rights ("MDHR") under the Minnesota Human Rights Act ("MDHA"). [ECF No. 7 ("Martin Decl."), Ex. 4.] Claims were filed with the Equal Employment Opportunity Commission ("EEOC") under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA").[6] (*Id.* at 35.) On May 23, 2016, the MDHR notified Birts that it would not take further action on his state law claims, and that he had 45 days to commence a civil action against St. Jude. (Martin Decl., Ex. 5.) On November 9, 2016, the EEOC notified Birts of its decision to dismiss his federal law claims because they were untimely, and that he had 90 days to file a lawsuit against St. Jude based on his Title VII and ADEA claims. (Martin Decl., Ex. 6.)

In September 2017, Birts filed an action against Volt for discriminatory hiring. The parties dismissed the action pursuant to a settlement. *See Birts v. Volt Workforce Solutions*, No. 17-cv-04705 (MJD/HB), Order of Dismissal (D. Minn. Jul. 2, 2018). On May 4, 2018,

---

[6] In his objections, Birts insists that he did not file charges with the EEOC. (Pl.'s Obj. at 3; Pl.'s 2d Obj. at 2.) The MDHR may have forwarded his charge to the EEOC, as the EEOC Notice to St. Jude indicates that the "charge [Birts] filed with the [MDHR] has now also been filed with the EEOC…." (Martin Decl., Ex. 4 at 35.)

5

Birts filed a complaint against St. Jude in Hennepin County District Court, alleging violations of the MHRA, Title VII, the ADEA, and § 1981 of the Civil Rights Act of 1866 ("§ 1981"). (Pl.'s Exs. at 2–4.) St. Jude was served with the complaint on July 19, 2018, and removed the case to federal soon thereafter. (Martin Decl., Ex. 1 at 4; ECF No. 1.)

Approximately one month later, St. Jude filed a motion for summary judgment on all claims, and the parties fully briefed the motion. In the R&R on the motion, Magistrate Judge Bowbeer recommended that Birts' MHRA, Title VII, and ADEA claims be dismissed as untimely. (R&R at 9–14.) She also found that Birts' § 1981 claim was timely filed. (*Id.* at 14–15.) In his second objection to the R&R, Birts acknowledges that his MHRA, Title VII, and ADEA claims are properly dismissed, noting "[a]t this point, we are not dealing with MHRA, Title VII, and ADEA claims…." (Pl.'s 2d Obj. at 3.) As no party specifically objects to these findings in the R&R, and the Court finds that the Magistrate Judge's analysis is well supported in fact and law, Birts' MHRA, Title VII, and ADEA claims are dismissed. *See* Fed. R. Civ. P. 72(b); *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015) ("Objections which are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to *de novo* review, but rather are reviewed for clear error.").

Birts objects to the Magistrate Judge's recommendation that his § 1981 claim be dismissed on the merits, and determination that additional discovery would not yield evidence sufficient to create genuine issue of material fact. (R&R at 15–22.) As such, the

6

Court will review *de novo* those portions of the R&R to which objections are made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see* D. Minn. L.R. 72.2(b)(3).

## ANALYSIS

### I. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if a factfinder could reasonably determine the issue in the non-moving party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the nonmoving party "may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial." *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009) (citing *Anderson*, 477 U.S. at 247–49). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus.*, 475 U.S. at 587 (citation omitted).

### II. 42 U.S.C. § 1981 Claim

Birts alleges a § 1981 discrimination claim against St. Jude for failing to hire him

for the medical assembler position. Section 1981 "prohibits racial discrimination in the making and enforcement of private contracts." *Runyon v. McCrary*, 427 U.S. 160, 168 (1976). Birts offers no direct evidence of unlawful discrimination. Thus, the Court analyzes his § 1981 claim under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Chappell v. Bilco Co.*, 675 F.3d 1110, 1118 (8th Cir. 2012) (explaining that *McDonnell Douglas* framework governs § 1981 claims). To establish a *prima facie* case of race discrimination in the failure-to-hire context, Birts must show that (1) he is in a protected class; (2) he was qualified for an open position; (3) he was denied that position; and (4) the employer filled the position with a person not in the same protected class. *Smith v. URS Corp.*, 803 F.3d 964, 968 (8th Cir. 2015) (citation omitted). If Birts establishes a *prima facie* case, the burden then shifts to St. Jude to articulate "a nondiscriminatory reason—a legitimate rationale—for its contested actions." *Id*. (citation omitted). Birts must then "produce evidence sufficient to create a genuine issue of material fact regarding whether [St. Jude's] proffered nondiscriminatory justifications are mere pretext for intentional discrimination." *Id*. (citation omitted). The burden to prove pretext "merges with the ultimate burden of persuading the court that [Birts was] the victim of intentional discrimination." *Id*. (citation omitted).

The parties do not dispute that Birts is a black male, and thus is a member of a protected class, or that he did not receive an offer for the medical assembler position. Birts maintains that he was qualified to perform the medical assembler position. While Kalra

attests that Birts had disqualifying aspects to his resume, his test scores appear to support his qualification for the position. Considering the evidence in the light most favorable to Birts, he raises a genuine issue of material fact as to whether he was qualified for the medical assembler position.

Where Birts' claim falters is the fourth element of a *prima facie* case. He does not proffer any evidence that the medical assembler position was filled by someone not in the same protected class. Birts provides a signed statement of Amal Jeylani ("Jeylani"), which states that Jeylani went to Volt for testing for a position at St. Jude in March 2015, several months after the incident at issue here. [ECF No. 25 ("Jeylani Statement").] After passing the tests, Jeylani was interviewed by a representative from St. Jude, and was hired. (*Id*.) Before that interview, Jeylani saw "a group of people[;] 3 or 4 were black Americans," and after returning to the testing area, "noticed the black Americans were still there." (*Id*.) Jeylani's statement fails to support a *prima facie* case against St. Jude, as it does not indicate Jeylani's race or whether St. Jude hired any of the black Americans Jeylani observed.

Even if Birts could provide evidence that St. Jude hired someone not of the same protected class for the medical assembler position, his discrimination claim would nonetheless fail because he is unable to connect the decision not to hire him to St. Jude, the sole defendant in this case. The undisputed evidence demonstrates that Volt employee Kalra decided not to advance Birts to the fifth step of the hiring process. (Kalra

Decl., ¶3.) Because Kalra removed Birts from the hiring process before the fifth step, St. Jude did not consider Birts for the medical assembler position. (*See* Damhof Decl., ¶4; Velarde Decl., ¶3 ("Birts was not passed on by Volt to St. Jude Medical for consideration"). Birts strongly disputes Kalra's stated reasons for not advancing him to the interview with St. Jude, but offers no evidence indicating that St. Jude was involved in Kalra's decision. Because Birts cannot connect St. Jude to the alleged discriminatory conduct, his discrimination claim against St. Jude fails. *See Taylor v. Ahold*, No. 3:16CV241, 2017 WL 377935, at *2 (E.D. Va. Jan. 23, 2017) (finding plaintiff failed to state a discrimination claim "because she has not connected the allegedly discriminatory conduct to the Defendant or his employees"); *Akmal v. Centerstance, Inc.*, No. 11-5378 RJB, 2013 WL 1499058, at *6 (W.D. Wash. Apr. 11, 2013) (finding plaintiff failed to state a § 1981 claim against an IT placement firm's client where she failed to allege that the client "subjected her to an adverse employment action").

Magistrate Judge Bowbeer similarly found that Birts' submissions fail to identify any specific discriminatory conduct by St. Jude or its employees. (R&R at 19.) Birts disagrees, arguing that that Volt "is more being used as a cover," as St. Jude "gave all instructions that day of the hiring process, not Volt," and St. Jude failed to follow its stated procedures for that day. (Pl. 2d Obj. at 4; *see* Pl.'s Obj. at 3 ("the criteria and evaluation comes from St. Jude's not Volt"); *id*. at 4 (noting Kalra "didn't identify herself [as a Volt employee]" which "speaks to the makeshift haphazard process that day, not some

10

already established process where Volt chose not to move me along").) But Birts does not identify anything discriminatory about the process, criteria, or evaluation that allegedly came from St. Jude and not Volt.

Birts relies on Jeylani's sworn statement to show that Jeylani was not interviewed by a Volt employee before being interviewed by a St. Jude representative. But this statement addresses Jeylani's experience with the hiring process in March 2015, months after Birts' experience in October 2014. In contrast, Damhof's Declaration explains the hiring process in October 2014. (*See* Damhof Decl., ¶¶2–3.) Even if Birts raised an issue of fact as to whether Volt deviated from the multi-step process in October 2014—in that Volt did not interview other applicants before St. Jude interviewed them—Birts does not dispute that a St. Jude employee never interviewed him. Rather, it is undisputed that he met with Kalra, and she decided not to advance him to the interview with St. Jude. None of the proffered evidence supports the inference that St. Jude somehow influenced Kalra or any other Volt employee to remove Birts from the hiring process before being interviewed by St. Jude. Because Kalra removed Birts from the hiring process, St. Jude did not consider him for the position. (Kalra Decl., ¶¶3–4; *see* Damhof Decl., ¶4; Velarde Decl., ¶3.) The facts before this Court demonstrate that, in Birts' case, the hiring process included an interview with a Volt employee after he completed the onsite testing. That Volt employee decided not to advance Birts in the hiring process, not St. Jude. As such, his § 1981 claim fails as a matter of law.

### III.     Federal Rule of Civil Procedure 56(d)

Where, as here, a motion for summary judgment is filed before the completion of discovery, the Court may defer or deny a summary judgment motion if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition. Fed. R. Civ. P. 56(d). "Rule 56(d) does not condone a fishing expedition where a plaintiff merely hopes to uncover some possible evidence of unlawful conduct." *Johnson v. Moody*, 903 F.3d 766, 772 (8th Cir. 2018) (citation omitted). Rather, to warrant time for additional discovery under Rule 56(d), Birts must show: (1) that he has set forth in an affidavit the specific facts that he hopes to elicit from further discovery, (2) that the facts sought exist, and (3) that those facts are "essential" to resist the summary judgment motion. *Id.* at 772 (citation omitted). It is not enough to present a list of facts sought to be discovered; the nonmovant must "articulate how those facts [a]re relevant to rebut the movant's showing of the absence of a genuine issue of fact." *Ray v. American Airlines, Inc.*, 609 F.3d 917, 923 (8th Cir. 2010) (citation omitted).

In his objections, Birts maintains that additional evidence will prove his discrimination claim, and requests more time to furnish the Court with witness affidavits of the "real process of formal employed St. Jude assembly workers." (Pl.'s Obj. at 5.) He contends that his witnesses will attest that St. Jude interviewed and hired them immediately after successful completion their onsite testing. (Pl. 2d Obj. at 5; *see id.* at 3 (maintaining that his witnesses can state the factual hiring procedures as to how they

were hired, who interviewed them, and that there was no extenuating interview process regardless of one's performance on the testing)); ECF No. 16 ("Pl.'s Witness List") at 1–2 (listing Jeylani, "Cloe," "Janie," "Muhammed," and "Lee" as being hired upon testing successfully).) Birts' witness list also includes "Ms Ginny," a St. Jude representative who allegedly interviewed those hired by St. Jude, and "was to interview" Birts. (Pl.'s Witness List at 2.) At best, the proposed testimony indicates that Birts should have been interviewed by a St. Jude representative, and not Kalra. But such testimony would not raise an issue of fact as to whether St. Jude was involved in Kalra's decision not to advance Birts to an interview with St. Jude. The undisputed facts remain that Birts interviewed with Volt recruiter Karla, and that her decision removed Birts from consideration by St. Jude. As such, the proposed testimony would not create a genuine issue of fact precluding summary judgment.

Birts also identifies his Goodwill Easter Seal recruiter who can attest to the starting wage of the medical assembler position, (Pl.'s Obj. at 2; *see* Pl.'s Witness List at 1), and witnesses "pertain[ing] to wage expected and discussed, hours and distance traveled and accepted and hiring process" for the medical assembler position, (Pl.'s Obj. at 3). These facts relate to the validity of Kalra's stated reasons for not advancing Birts to the St. Jude interview. Again, however, Kalra was not an employee of St. Jude and there is no evidence that St. Jude influenced her decision. The validity of Kalra's reasons for not advancing Birts does not raise a genuine issue of material fact precluding summary

13

judgment on the discrimination claim against St. Jude. *See Davis v. Minneapolis Pub. Sch.*, No. CIV. 10-2638 DWF/JJK, 2011 WL 6122313, at *1 (D. Minn. Dec. 8, 2011) (denying objections that related to factual matters not relied upon by the Magistrate Judge and not material to the R&R's conclusions). Because Birts has not shown the existence of specific facts demonstrating that St. Jude was involved in the decision to hire Birts or acted with discriminatory intent, the Court finds no basis to conclude that discovery would enable Birts to unearth evidence essential to defeat St. Jude's summary judgment motion.

## CONCLUSION

Based on the foregoing, and on all the files, records and proceedings herein, the Court OVERRULES Birts' objections [ECF Nos. 24, 28], and ACCEPTS the R&R [ECF No. 23]. IT IS HEREBY ORDERED THAT:

1. St. Jude's Motion for Summary Judgment [ECF No. 4] is GRANTED; and
2. This action is DISMISSED WITH PREJUDICE.

LET JUDMENT BE ENTERED ACCORDINGLY.

Dated: January 31, 2019　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　　　s/Nancy E. Brasel
　　　　　　　　　　　　　　　　　　　　Nancy E. Brasel
　　　　　　　　　　　　　　　　　　　　United States District Judge